```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/9/2018
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
        -against-                                           :        S6 15-CR-153 (VSB)
                                                            :
                                                            :        OPINION & ORDER
YONELL ALLUMS,                                              :
                                                            :
                        Defendant.                          :
                                                            :
-----------------------------------------------------------X
```

VERNON S. BRODERICK, United States District Judge:

Currently before me is the motion of Defendant Yonell Allums ("Defendant" or "Allums") for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Allums argues that he is entitled to a new trial under Rule 33 because the admission of his prior testimony and conviction from *United States v. Walker* (the "1997 Trial") was both improper and unduly prejudicial. The motion for a new trial is DENIED because (1) Allums placed his knowledge and intent at issue during the trial and (2) the introduction of the challenged evidence was not unduly prejudicial.

## I. Background and Procedural History

### A. *The Indictment*

On June 28, 2017, Allums was charged in a two-count superseding indictment. (*See* Doc 266 ("S6 Indictment").) Count One charged Allums with conspiring to distribute and possess with intent to distribute controlled substances under 21 U.S.C. § 841(a)(1), including five or more kilograms of cocaine and 280 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A). (S6 Indictment ¶¶ 1–3.) Count Two charged Allums with possessing a firearm in furtherance of the narcotics conspiracy under 18 U.S.C. § 924(c). (*Id.* ¶ 4.)

## B. *Pre-Trial*

In its pre-trial motions in limine, the Government sought to introduce at trial (1) Allums's testimony in the 1997 Trial, during which Allums admitted to selling large quantities of cocaine, crack cocaine, and heroin while running his store located on 173 Woodworth Avenue, Yonkers, New York and to possessing a firearm to protect his drug business, from 1992 to 1997; and (2) a certified copy of disposition confirming that Allums was convicted of narcotics conspiracy and firearms charges. (Doc. 324.) Specifically, the Government sought to introduce the transcript of the trial testimony and disposition to prove Allums's knowledge and intent with respect to the narcotics conspiracy and firearms charge.

At the final pre-trial conference (the "FPTC") on October 10, 2017, in response to the Government's motion, Allums's counsel stated the following:

> We intend to argue that he didn't know. He has, like you said, a very, very tangential . . . relationship to that property. He certainly doesn't live there. He doesn't have unabated access to it. He doesn't go through there left and right. So, to the extent that any evidence of any narcotics activity was recovered in that apartment, Mr. Allums certainly was not aware of it.

(FPTC Tr. at 8.)[1] I ultimately reserved ruling on the Government's motion until after trial began, but cautioned Allums's counsel that he was "going to have to be very scrupulous, I think, in the way you cross-examine folks and the arguments that you make from that." (*Id.* at 33).

## C. *Trial*

Trial commenced on October 23, 2017. During trial, the Government introduced evidence that the property at 173 Woodworth Avenue—the store, apartment, and surrounding grounds—was the base of operations for Allums's drug business. (*See, e.g.*, Trial Tr. at 122–43, 183, 186, 641–51, 753–70, 805–06, 827–47; GX 1–5 (drugs purchased from store property in

---

[1] "FPTC Tr." refers to the transcript from the FPTC on October 10, 2017.

2

2016); GX 6A, B, C, D, E, F, L, Q, R, S (drugs and drug paraphernalia seized from apartment in 2016); GX 7A, B, C, D (drugs and drug paraphernalia seized from apartment in 2012).) The Government also offered evidence directly tying Allums to the store property. (*See, e.g.*, Trial Tr. at 183, 653; GX 405, GX 411, GX 420B.)[2]

Four cooperating witnesses—Steven Christopher, Candice Southerland, Daryl Bracy, and Anthony Alexander—also testified for the Government. All four witnesses were members of the narcotics conspiracy at different points in time between 2011 and 2016. Two of the cooperators—Christopher and Southerland—testified that Allums acted as their supplier of cocaine, providing them with drugs at the store located at 173 Woodworth Avenue, Yonkers, New York. (*See, e.g.*, Trial Tr. at 180, 185–86, 682–83.) Christopher also testified that he personally cooked cocaine into crack for Allums and saw Allums cooking cocaine into crack himself. (*See, e.g.*, *id.* at 193.) All four cooperators also testified to seeing guns on the store property, and Christopher testified that he personally saw Allums in possession of a firearm at the store during the course of the conspiracy. (*See, e.g.*, *id.* at 246–47, 691, 819, 1107.) The cooperators corroborated each other, and their testimony was further corroborated by, among other things, call records among alleged conspirators, seizures of drugs on two occasions from the apartment above the store located at 173 Woodworth Avenue, and recorded controlled purchases of crack cocaine from Allums's nephew—Kaheim Allums—on the store property. (*See, e.g.*, GX 1–5, 6A–6V, 7A–7D, 202A–203H, 501–517, 802, 803.)

On direct examination, Southerland testified to two instances when she picked up an envelope with a vacuum sealed bag of cocaine from Allums on the store property. In both

---

[2] "Trial Tr." refers to the transcript of the trial in this matter. "GX" refers to the exhibits entered in evidence by the Government at the trial.

3

instances, Southerland met Allums at the store, followed him to the apartment behind the store, and waited for him to hand her the envelope. (Trial Tr. at 684–87.) During cross-examination, Allums's counsel asked Southerland the following questions regarding these incidents:

> Q. You testified that the two times that you went to the store to get what you believed was contraband from Mr. Allums that the substances were actually acquired from the apartment right, the house, the residence, whatever you want to call it?
> A. Yes.
> Q. Nothing was in the store, right?
> A. No.
> Q. And both times you say you met Mr. Allums in the store?
> A. Um-hum.
> Q. And then the two of you together went to the house, right?
> A. Yes
> Q: Did Mr. Allums have a key? How did he get in the house?
> A. I don't remember that.
> Q. When you went into the house you said you stayed at the doorway?
> A. Yes.
> Q. What did you see as you were standing in the doorway?
> A. I don't remember that.
> Q. You don't remember that either?
> A. No.
> Q. You just remember that you walked around the side of the deli and you stood in a doorway, you specifically remember getting two white envelopes with white powdery substance in them?
> A. Yes.

(*Id.* at 726–28.)

> Q. I want to ask also about these envelopes that you say you picked up from Mr. Allums. Now, are these just regular standard mailing envelopes?
> A. Yes.
> Q. And were they sealed?
> A. No.
> Q. To the best of your ability, could you describe the thickness? How much was in there?
> A. I don't know.
> Q. In your experience, would you describe it as a small amount?
> A. Yes.

(*Id.* at 739–40.)

At this point, the Government renewed its motion to admit Allums's prior testimony and conviction to prove the knowledge and intent elements of the narcotics and firearms charges.

4

After hearing argument from the parties, I issued a written order granting the Government's motion. (Doc. 366.) In so doing, I rejected Allums's claim that he had unequivocally taken knowledge and intent off the table, noting defense counsel's inconsistent statements on the subject at the FPTC, as well as counsel's opening statement and cross-examination of witnesses, including Southerland. (*Id.* at 1, 3.) I also rejected the suggestion that Allums's attack on cooperator credibility or mere presence defense was sufficiently distinct from and did not implicate his knowledge and intent. (*Id.* at 2–3.) Accordingly, I concluded that the prior testimony and record of conviction were admissible under Rule 404(b), and the probative value of the evidence was not substantially outweighed by unfair prejudice under Rule 403. (*Id.* at 4.)

Following my ruling, the Government introduced (1) GX 901R, excerpts of Allums's testimony in the 1997 Trial; and (2) GX 902R, excerpts of Allums's judgment and conviction in that case. (Trial Tr. at 1572–73.) The Government introduced the transcript by reading it aloud into the record with a prosecutor reading the questions and a paralegal reading the answers. (*Id.* at 1574–84.) The Government introduced the conviction record by showing it on a large screen to the jurors and reading aloud the following excerpt: "United States District Court, Southern District of New York, United States of America v. Yonell Allums. Judgment in a criminal case. Then further down it lists the charges, conspiracy to distribute cocaine and use of a firearm in relation to drug trafficking." (*Id.* at 1584.) Immediately after these exhibits were introduced but before they were read aloud to the jury, I provided an instruction to the jury limiting their use of the evidence:

> Ladies and gentlemen, these exhibits are being admitted for a limited purpose, and the limited purpose is the following: They are being admitted with regard to the elements of knowledge and intent as it relates to Mr. Allums. It is not coming in as to in any way, shape, or form as to Mr. Frazier. In fact, Mr. Frazier is not alleged and in fact was not a participant in the activities that are discussed in the transcript that you are about to hear

5

> testimony from or in connection with the disposition. . . . Ladies and gentlemen, obviously, this is my initial instruction to you. It will be followed up by a more detailed instruction to you when I give you the jury instructions as a whole.

(*Id.* at 1573–74.) Both parties received a draft of the limiting instruction prior to its introduction and provided input as to the final language. Similarly, when charging the jury after the close of evidence, I included a specific instruction regarding the limited use of the prior testimony and conviction record. (*Id.* at 2452–54.)

On November 13, 2017, after three days of deliberation, the jury found Allums guilty of participating in a narcotics conspiracy, but found him responsible for the lesser amount of 500 grams or more of cocaine and 28 grams or more of crack cocaine under 21 U.S.C. § 846(b)(1)(B). The jury found Allums not guilty of the firearms count under 18 U.S.C. § 924(c).

### D. *Post-Trial*

On December 27, 2017, Allums filed this instant motion for a new trial, as well as a memorandum of law in support of his motion. (Docs. 470–71.) The Government filed its opposition to Allums's motion on January 29, 2018. (Doc. 502.) Allums did not file a reply.

## II. Legal Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court has "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). However, the court must "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (internal quotation marks omitted). It is the jury's role to weigh the evidence and assess a witness's credibility, and

a district court generally "must defer to the jury's resolution" of those issues. *United States* v. *Bell*, 584 F.3d 478, 483 (2d Cir. 2009) (per curiam) (quoting *Sanchez*, 969 F.2d at 1414). Indeed, only in "exceptional circumstances" may a trial judge "intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134. "The trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *Id.* (quoting *Sanchez*, 969 F.2d at 1414). "There must be a real concern that an innocent person may have been convicted. It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" *Bell*, 584 F.3d at 483 (quoting *Sanchez*, 969 F.2d at 1414). "The defendant bears the burden of proving that he is entitled to a new trial . . . ." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

### III. <u>Discussion</u>

In seeking a new trial under Rule 33, Allums renews his argument that the Government should not have been permitted to introduce excerpts of the transcripts of Allums's testimony in the 1997 Trial and the record of his prior conviction in that case because he did not put knowledge and intent at issue in the present trial. He furthers argues that the manner in which the Government introduced the transcript and judgment of conviction was unduly prejudicial. I address each issue in turn.

#### A. *Rule 404(b)*

##### 1. **Applicable Law**

Federal Rule of Evidence 404(b) provides, in pertinent part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person

7

> acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2) . The Second Circuit "ha[s] adopted an inclusionary approach to evaluating Rule 404(b) evidence, which allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's 'criminal propensity.'" *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002)). To the extent other act evidence is not direct evidence of the charged crimes, it remains admissible under Rule 404(b) if "(1) it was offered for a proper purpose; (2) it was relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible prejudice; and (4) the trial court administered an appropriate limiting instruction." *Id.* The court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b). *See United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994).

Where a defendant claims that he lacked the knowledge, intent, or motive to distribute or possess with intent to distribute narcotics, the Government is permitted to introduce evidence of the defendant's other narcotics convictions and narcotics activity. *See, e.g.*, *United States v. Arango-Correa*, 851 F.2d 54, 60 (2d Cir. 1988) (concluding that evidence of defendant's general knowledge of narcotics transactions admissible where knowledge was at issue); *United States v. Fernandez*, 829 F.2d 363, 367 (2d Cir. 1987) (holding that prior narcotics activity admissible where "the defendant does not contest that he was present during a narcotics transaction but denies any wrongdoing"). To take knowledge or intent out of a case, "a defendant must make some statement to the court of sufficient clarity to indicate that the issue will not be disputed." *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (quoting *United States v. Colon*, 880 F.2d 650, 659 (2d Cir. 1989)). "A defendant may do so either 'by putting forward a particular

8

theory of defense or by specifically offering to stipulate.'" *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 168 (S.D.N.Y. 2006) (quoting *Colon*, 880 F.2d at 657).

Defense theories at trial focusing on the credibility of witnesses or the "mere presence" of a defendant are insufficient to remove knowledge and intent from consideration. The Second Circuit has explained:

> A statement to the jury that the government's witnesses will be shown to be untruthful is simply not a sufficient commitment that the defendant removes the issue of knowledge or intent from the case. . . . An attack on the credibility of the government's witnesses is essentially a claim that the government has not met its burden of proof, a proposition quite different from either a claim of innocence or a concession that the government need not prove the defendant's knowledge and intent.

*United States v. Tarricone*, 996 F.2d 1414, 1422 (2d Cir. 1993). Arguments that a defendant was merely present at or near the scene of criminal activity are similarly insufficient to take knowledge and intent out of dispute. *See United States v. Gadsden*, 300 F. App'x 108, 110 (2d Cir. 2008) (summary order) ("Testimony about prior drug sales may be used to establish 'knowledge' and 'intent' where the defendant repeatedly raises a 'mere presence' defense, as that defense fails to make a 'statement to the court of sufficient clarity to indicate that the issues of knowledge or intent will not be disputed.'" (quoting *Colon*, 880 F.2d at 659)); *United States v. Casimiro*, No. S1 09 CR 497(NRB), 2011 WL 2714217, at *2 (S.D.N.Y. July 8, 2011) ("[T]he assertion of a 'mere presence' defense opens the door to other act evidence because such a defense makes the defendant's knowledge and intent central issues in the case."). Moreover, the Government may introduce such evidence in its direct case if it is apparent that the defendant will dispute intent or knowledge. *See United States v. Zackson*, 12 F.3d 1178, 1183 (2d Cir. 1993) ("Nor do we find error in the district court's decision to allow the government to introduce the [other act] evidence in its case-in-chief."); *Inserra*, 34 F.3d at 90 (collecting cases).

## 2. Application

Here, Allums renews his argument that his prior testimony and conviction should not have been admitted because knowledge and intent were not a disputed issue at trial. (*See* Def.'s Mem. 4–8.)[3] I previously rejected this argument at trial, and I do so again in the context of Allums's motion for a new trial. Allums did not unambiguously convey that he was not disputing knowledge or intent through a particular theory of defense or by specifically offering to stipulate. *See Ozsusamlar*, 428 F. Supp. 2d at 168. Instead, Allums repeatedly put knowledge and intent at issue during counsel's opening statements and during the cross-examination of witnesses. For example, during his opening statement Allums's counsel stated that, with respect to the 2012 and 2016 searches, no "illicit substance or contraband was ever found on Yonell Allums' person or in this store, this drug front that allegedly is the nexus of all his trafficking activity, and you are not going to hear that anything was recovered in the basement or in the garage or in the yard," and that "despite this alleged central location of traffic, not a single illicit substance was found." (Trial Tr. at 85–86). Similarly, on cross-examination, Allums sought to establish that he did not know what was in the envelopes by asking Southerland about the size and thickness of the envelopes, whether she saw Allums put anything in the envelopes, and whether the envelopes were sealed. (*Id.* at 726–28, 739–40.)

Allums correctly acknowledges that merely attacking the credibility of witnesses is insufficient to remove the issue of knowledge and intent, (*see* Def.'s Mem. 5), which is precisely what occurred in this case. In his opening statement, defense counsel attacked the cooperators' credibility, stating that "[i]t will be hard to conceive of a more manipulative and lying group of

---

[3] "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of Yonell Allums' Motion for a New Trial. (Doc. 471.)

people than the government's cooperators in this case," (Trial Tr. at 90), and arguing that "[b]y the time these witnesses finish testifying they will be exposed for exactly what they truly are, as will the government's case," (*id.* at 93). As the Second Circuit has held, such a defense is not "the functional equivalent of a defense that the defendant did not commit the charged acts." *Tarricone*, 996 F.2d at 1422.

Allums argues that he clearly supplemented his attack on the cooperators' credibility with an unequivocal statement that he would not dispute the knowledge and intent elements of the charged offenses. (Def.'s Mem. 7.) As discussed previously, however, Allums failed to make such an unequivocal statement, and he repeatedly put knowledge and intent squarely at issue.[4] Thus, Allums's prior testimony and conviction—which the Government offered to negate a defense of lack of intent and knowledge—was properly admitted because "[a]n attack on the credibility of the government's witnesses is essentially a claim that the government has not met its burden of proof, a proposition quite different from either a claim of innocence or a concession that the government need not prove the defendant's knowledge and intent." *Tarricone*, 996 F.2d at 1422; *see also Casimiro*, 2011 WL 2714217, at *2 (admitting prior act evidence where defense counsel argued that his defense was grounded in the credibility of the Government's witnesses). Further, Allums affirmatively argued that the cooperators were lying—not that their testimony if believed was insufficient to prove his guilt beyond a reasonable doubt.

Similarly, Allums's attempts to distance himself from the illegal conduct by suggesting he was unaware of the activity around him opened the door to the introduction of the prior testimony and conviction. This type of "mere presence" defense fails to sufficiently indicate that

---

[4] Defense counsel's contention that he offered to stipulate to knowledge and intent in order to make a clear and unequivocal statement is misleading. (*See* Def.'s Mem. 8; Trial Tr. at 893.) Counsel's offer to stipulate to knowledge and intent occurred well after he opened the door through opening statements and cross-examination, including the questioning of Southerland.

11

the issue of knowledge and intent is not in dispute. *See Gadsden*, 300 F. App'x at 110. At numerous points during trial, counsel for Allums challenged the evidence that Allums was regularly present at the property at 173 Woodworth Avenue. Specifically, defense counsel suggested that Allums had limited access to areas surrounding the store, such as the upstairs apartment, essentially laying the groundwork for a "mere presence" defense. (Trial Tr. at 85–86, 88; *see also* FPTC Tr. at 8.) Such a defense fails to remove the issue of knowledge and intent from the case. *See Zackson*, 12 F.3d at 1182; *Pitre*, 960 F.2d at 1119. Accordingly, Allums's prior testimony and conviction in the 1997 Trial was properly admitted under Rule 404(b).

### B. *Rule 403*

#### 1. Applicable Law

Evidence of other acts under Rule 404(b) is, like all other evidence, inadmissible under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, and "the district court bears the responsibility of making this determination," *Arango-Correa*, 851 F.2d at 60. "The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). Evidence is unfairly prejudicial, however, "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *Id.* Other act evidence is typically not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

#### 2. Application

Here, not only was the evidence of Allums's prior drug dealing and firearms possession

admissible under Rule 404(b), but its probative value was not substantially outweighed by any unfair prejudice under Rule 403. The conduct described in the prior testimony and record of conviction in the 1997 Trial—which involved the distribution of narcotics and possession of firearms—was precisely the same conduct charged in the present trial, and was therefore no more inflammatory than the charged offenses. *See Roldan-Zapata*, 916 F.2d at 804. Moreover, Allums's claim of unfair prejudice ignores the precautions taken during trial to avoid any prejudice. I provided two unequivocal limiting instructions to the jury: one before the exhibits were read aloud, (Trial Tr. at 1573–74), and a second during the charge at the end of the trial, (*id.* at 2452–54). These instructions to the jury further minimized any risk of undue prejudice. *See United States v. Shyne*, 388 F. App'x 65, 71 (2d Cir. 2010) (summary order) (explaining that "the district court minimized the risk of prejudice by instructing the jury").

Allums also challenges the manner in which the Government introduced the transcript and judgment of conviction, arguing that it was unduly prejudicial. Besides the conclusory and speculative assertion, Allums offers no factual or legal support for his claim that reading the transcript from the 1997 Trial to the jury, rather than making it available for the jury to read silently, caused him any prejudice let alone unfair prejudice. Accordingly, Allums's prior testimony and conviction in the 1997 Trial were not unduly prejudicial under Rule 403, and thus there is no ground for a new trial under Rule 33.

Although I conclude that it was proper to admit the two challenged exhibits, I note that the admission of these exhibits would not constitute grounds for a new trial under the Rule 33 standard. As the Government properly points out, these exhibits were part of a nearly four-week jury trial and were admitted with explicit limiting instructions. The remaining evidence, which included four cooperators, controlled purchases, seizures, and phone records, overwhelmingly

13

proved Defendant's participation in the narcotics conspiracy. Further, the jury ultimately found Allums responsible in this case for a smaller quantity of narcotics than Allums admitted to during his 1997 Trial testimony and acquitted him of the firearms possession charge. Such a verdict makes clear that the jury considered the evidence without conflating the defendant's prior conduct with his more recent criminal activity. In short, there is no concern here that "it would be a manifest injustice to let the guilty verdict stand." *Sanchez*, 969 F.2d at 1414 (internal quotation marks omitted).

## IV. Conclusion

For the reasons stated above, Defendant's motion for a new trial is DENIED. The Clerk of the Court is respectfully directed to terminate the pending motion at Document 470.

SO ORDERED.

Dated: May 9, 2018
      New York, New York

_____
Vernon S. Broderick
United States District Judge