USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/7/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                  :

UNITED STATES OF AMERICA,          :

      -against-                                     :         S6 15-CR-153 (VSB)

                                                  :         **OPINION & ORDER**

YONELL ALLUMS,                      :

               Defendant.             :

------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

       Currently before me is the second motion of Defendant Yonell Allums ("Defendant" or "Allums") for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Allums argues that he is entitled to a new trial pursuant to Rule 33 because "of newly discovered evidence of prosecutorial misconduct." (Doc. 650 at 5.) The motion for a new trial is DENIED because (1) the evidence related to the Government's misrepresentation of co-defendant Darnell Frazier's testimony is contained in the trial transcript and is therefore not newly discovered evidence; (2) Allums was not unduly prejudiced by the Government's misrepresentation since Frazier and Allums did not meet until 2011, Frazier's 1998 drug sale and conviction admitted to by Frazier predated the charged conspiracy, and Frazier's testimony did not directly or indirectly implicate Allums in Frazier's 1998 drug sale; (3) the instructions to the jury as a whole eliminated any prejudice to Allums from Frazier's admissions; and (4) the evidence of Allums's guilt was overwhelming.

## I. Background and Procedural History

### A. *The Indictment*

On June 28, 2017, Allums was charged in a two-count superseding indictment. (*See* Doc. 266 ("S6 Indictment").) Count One charged Allums with conspiring to distribute and possess with intent to distribute controlled substances under 21 U.S.C. § 841(a)(1), including five or more kilograms of cocaine and 280 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A). (S6 Indictment ¶¶ 1–3.) Count Two charged Allums with possessing a firearm in furtherance of the narcotics conspiracy under 18 U.S.C. § 924(c). (*Id.* ¶ 4.)

### B. *Trial*

Trial commenced on October 23, 2017. During trial, the Government introduced evidence that the property at 173 Woodworth Avenue, Yonkers, New York ("173 Woodworth")—a location that included a store, apartment, and surrounding grounds—served as the base of operations for Allums's drug business. (*See, e.g.*, Trial Tr. at 122–43, 183, 186, 641–51, 753–70, 805–09, 827–47; GX 1–5 (drugs purchased from store property in 2016); GX 6A, B, C, D, E, F, L, Q, R, S (drugs and drug paraphernalia seized from apartment in 2016); GX 7A, B, C, D (drugs and drug paraphernalia seized from apartment in 2012).) The Government also offered evidence directly tying Allums to the store property. (*See, e.g.*, Trial Tr. at 183, 653; GX 405, GX 411, GX 420B.)[1]

Four cooperating witnesses—Steven Christopher, Candice Southerland, Daryl Bracy, and Anthony Alexander—all testified that they were members of the narcotics conspiracy at different points in time between 2011 and 2016. Two of the cooperators—Christopher and Southerland—

---

[1] "Trial Tr." refers to the transcript of the trial in this matter. "GX" refers to the exhibits entered in evidence by the Government at the trial.

testified that Allums acted as their supplier of cocaine, providing them with drugs at the store located at 173 Woodworth. (*See, e.g.*, Trial Tr. at 180, 185–86, 682–83.) Christopher also testified that he personally cooked cocaine into crack for Allums and saw Allums cooking cocaine into crack himself. (*See, e.g., id.* at 193.) All four cooperators also testified to seeing guns on the store property, and Christopher testified that he personally saw Allums in possession of a firearm at the store during the course of the conspiracy. (*See, e.g., id.* at 246–47, 691, 819, 1107.) The cooperators corroborated each other, and their testimony was also corroborated by, among other things, telephone call records demonstrating contact among alleged conspirators, seizures of drugs during the execution of search warrants on two occasions from the apartment above the store located at 173 Woodworth, and audio recorded controlled purchases of crack cocaine from Allums's nephew—Kaheim Allums—on the store property. (*See, e.g.*, GX 1–5, 6A–6V, 7A–7D, 202A–203H, 501–517, 802, 803.)

On direct examination, Southerland testified to two instances when she picked up an envelope with a vacuum sealed bag of cocaine from Allums on the store property. In both instances, Southerland met Allums at the store, followed him to the apartment behind the store, and waited for him to hand her the envelope. (Trial Tr. at 684–87.) During cross-examination, Allums's counsel asked Southerland the following questions regarding these incidents:

> Q. You testified that the two times that you went to the store to get what you believed was contraband from Mr. Allums that the substances were actually acquired from the apartment right, the house, the residence, whatever you want to call it?
>
> A. Yes.
>
> Q. Nothing was in the store, right?
>
> A. No.
>
> Q. And both times you say you met Mr. Allums in the store?

3

> A. Um-hum.
>
> Q. And then the two of you together went to the house, right?
>
> A. Yes
>
> Q: Did Mr. Allums have a key? How did he get in the house?
>
> A. I don't remember that.
>
> Q. When you went into the house you said you stayed at the doorway?
>
> A. Yes.
>
> Q. What did you see as you were standing in the doorway?
>
> A. I don't remember that.
>
> Q. You don't remember that either?
>
> A. No.
>
> Q. You just remember that you walked around the side of the deli and you stood in a doorway, you specifically remember getting two white envelopes with white powdery substance in them?
>
> A. Yes.

(*Id.* at 727–28.)

> Q. I want to ask also about these envelopes that you say you picked up from Mr. Allums. Now, are these just regular standard mailing envelopes?
>
> A. Yes.
>
> Q. And were they sealed?
>
> A. No.
>
> Q. To the best of your ability, could you describe the thickness? How much was in there?
>
> A. I don't know.
>
> Q. In your experience, would you describe it as a small amount?
>
> A. Yes.

(*Id.* at 739–40.) After this testimony, the Government renewed its motion to admit Allums's prior sworn statements and conviction to prove the knowledge and intent elements of the narcotics and firearms charges. After hearing argument from the parties, I issued a written order granting the Government's motion. (Doc. 366.)[2]

Following my ruling, the Government introduced (1) GX 901R, excerpts of Allums's testimony in the 1998 Trial; and (2) GX 902R, excerpts of Allums's judgment and conviction in that case. (Trial Tr. at 1572–73.) The Government introduced the transcript by reading it aloud into the record with a prosecutor reading the questions and a paralegal reading the answers. (*Id.* at 1574–84.) The Government introduced the conviction record by showing it on a large screen to the jurors and reading aloud the following: "United States District Court, Southern District of New York, United States of America v. Yonell Allums. Judgment in a criminal case. Then further down it lists the charges, conspiracy to distribute cocaine and use of a firearm in relation to drug trafficking." (*Id.* at 1584.) After the introduction of these documents but prior to counsel reading anything to the jury, I provided an instruction to the jury limiting their use of the evidence:

> Ladies and gentlemen, these exhibits are being admitted for a limited purpose, and the limited purpose is the following: They are being admitted with regard to the elements of knowledge and intent as it relates to Mr. Allums. It is not coming in as to in any way, shape, or form as to Mr. Frazier. In fact, Mr. Frazier is not alleged and in fact was not a participant in the activities that are discussed in the transcript that you are about to hear testimony from or in connection with the disposition. . . . Ladies and gentlemen, obviously, this is my initial instruction to you. It will be followed up by a more detailed instruction to you when I give you the jury

---

[2] In this Order I (1) rejected Allums's claim that he had unequivocally taken knowledge and intent off the table by, among other things, pointing out defense counsel's inconsistent statements on the subject; (2) rejected the suggestion that Allums's attack on cooperator credibility or mere presence defense was sufficiently distinct from and did not implicate his knowledge and intent; and (3) concluded that the prior testimony and record of conviction were admissible under Rule 404(b), and the probative value of the evidence was not substantially outweighed by unfair prejudice under Rule 403. (*See generally* Doc. 366.)

5

instructions as a whole.

(*Id.* at 1573–74.) Similarly, when charging the jury after the close of evidence, I included a specific instruction regarding the limited use of the prior testimony and conviction record. (*Id.* at 2452–54.) Specifically, that instruction stated in part that:

> You have heard certain evidence at this trial which you are only permitted to be considered for certain limited purposes, which I will describe for you in a moment. You may not consider this evidence for any purpose other than those limited purposes that I am about to describe. You may not consider any of this evidence as proof that the defendant whom you are considering has a criminal personality or bad character.
>
> First, you heard evidence of Yonell Allums' prior convictions, Government Exhibit 902R, and testimony related to those convictions, Government Exhibit 901R. I instruct you that this evidence was admitted only against Mr. Allums and not against Mr. Frazier. Mr. Frazier was not involved in Mr. Allums' prior crimes. Moreover, even as to Mr. Allums, this evidence was admitted only for a limited purpose.
>
> Specifically, let me remind you that Mr. Allums is not on trial for committing any act not alleged in the indictment. Accordingly, you may not consider the 1998 testimony or the prior conviction as a substitute for proof that Mr. Allums committed the crime charged. Nor may you consider this evidence as proof that Mr. Allums has a criminal personality or bad character. The evidence of the other, similar act was admitted for a much more limited purpose, and you may consider it only for that purpose.
>
> If you determine that Mr. Allums committed the acts charged in the indictment and the similar acts as well, then you may, but you are not required to, draw an inference that in doing so the acts charged in the indictment – I'm sorry. Let me start over again with that paragraph.
>
> If you determine that Mr. Allums committed the acts charged in the indictment and the similar acts as well, then you may, but you are not required to, draw an inference that in doing the acts charged in the indictment, Mr. Allums acted knowingly and intentionally and not because of some mistake, accident, or other innocent reasons.
>
> Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that Mr. Allums committed the other act – I'm sorry. Specifically, you may not use this evidence to conclude that because Mr. Allums committed the other act he must also have committed the acts charged in the indictment.

6

(*Id.*)

On November 13, 2017, after three days of deliberation, the jury found Allums guilty of participating in a narcotics conspiracy, but found him responsible for the lesser amount of 500 grams or more of cocaine and 28 grams or more of crack cocaine under 21 U.S.C. § 846(b)(1)(B).  The jury found Allums not guilty of the firearms count under 18 U.S.C. § 924(c).[3]

### C.  Post-Trial

On December 27, 2017, Allums filed his first motion for a new trial, as well as a memorandum of law in support of his motion.  (Docs. 470, 471.)  The Government filed its opposition to Allums's motion on January 29, 2018.  (Doc. 502.)  Allums did not file a reply.  I issued an Opinion & Order denying Allums's motion for a new trial on May 9, 2018, finding that "(1) Allums placed his knowledge and intent at issue during the trial and (2) the introduction of the challenged evidence was not unduly prejudicial."  (Doc. 544.)

On July 19, 2019, Allums filed the instant motion for a new trial, as well as a memorandum of law in support of his motion.  (Docs. 549–50.)  The Government filed its opposition to Allums's motion on September 12, 2019, (Doc. 559), and Allums filed his reply on September 24, 2019, (Doc. 560).

On June 14, 2018, Allums appealed my Opinion & Order of May 9, 2018, denying his motion for a new trial.  (*United States v. Yonell Allums*, No. 18-1794.)  On August 7, 2019, the Second Circuit Granted Allums' motion to stay the appeal pending my decision on this second motion for a new trial.  The stay was lifted on April 1, 2020, and the Government filed its brief on July 1, 2020.  I am ruling on this motion even though the stay has been lifted.

---

[3] The jury also found Darnell Frazier guilty of the same offense and quantity of drugs.  (Doc. 385.)

## II. <u>Legal Standard</u>

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial under Rule 33 "must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

A district court has "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). However, the court must "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (internal quotation marks omitted). It is the jury's role to weigh the evidence and assess a witness's credibility, and a district court generally "must defer to the jury's resolution" of those issues. *United States v. Bell*, 584 F.3d 478, 483 (2d Cir. 2009) (per curiam) (quoting *Sanchez*, 969 F.2d at 1414). Indeed, only in "exceptional circumstances" may a trial judge "intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414.

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134. "The trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *Id.* (quoting *Sanchez*, 969 F.2d at 1414). "There must be a real concern that an innocent person may have been convicted. It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" *Bell*, 584 F.3d at 483 (quoting *Sanchez*, 969 F.2d at 1414). "The defendant bears the burden of proving that he is entitled to a new trial . . . ." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

8

"Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). "Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that '(1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.'" *United States v. Forbes*, 790 F.3d 403, 406-08 (2d Cir. 2015) (quoting *United States v. Owen*, 500 F.3d 83, 88 (2d Cir. 2007)); *see United States v. Dukes*, 727 F.2d 34, 38 (2d Cir. 1984) ("For evidence to be considered newly discovered for purposes of Rule 33, a defendant must show that the evidence was discovered after trial and that it could not have been discovered sooner with the exercise of due diligence."). Claims of prosecutorial misconduct based on conduct that took place on the record at trial cannot constitute newly discovered evidence and must therefore be raised within an earlier timeframe provided for by Rule 33. *See Dukes*, 727 F.2d at 39.

A defendant seeking a new trial based upon prosecutorial misconduct bears a "heavy burden". *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993). "When a defendant alleges that prosecutorial misconduct entitles him to a new trial, he faces a substantial burden because the misconduct alleged must be so severe and significant as to result in the denial of a fair trial." *United States v. Muyet*, 994 F. Supp. 501, 520 (S.D.N.Y. 1998). In evaluating a claim of prosecutorial misconduct, a court considers: "(1) the severity of the alleged misconduct; (2) the curative measures taken; and (3) the likelihood of conviction absent any misconduct." *Id*.

Courts in this circuit have held that a district court considering a claim of "prosecutorial misconduct to which no objection [was] raised during trial is reviewed for plain error under

9

Fed.R.Crim.P. 52(b).ˮ *United States v. Washington*, 263 F. Supp. 2d 413, 426 n. 7 (D. Conn. 2003).  ʺA plain error that affects substantial rights may be considered even though it was not brought to the court's attention.ˮ  Fed. R. Crim. P. 52(b).

The filing of a notice of appeal typically a district court of jurisdiction over those aspects of the case involved in the appeal; however, Rule 33 specifically states that "if an appeal is pending, the court may grant the motion only on remand of the case."  Fed. R. Crim. P. 33.  "By implication, Rule 33 leaves the district court free to entertain a Rule 33 motion after a notice of appeal has been filed.  Accordingly, the district court retains jurisdiction to deny a Rule 33 motion during the pendency of an appeal, even though it may not grant such motion unless the Court of Appeals first remands the case to the district court."  *United States v. Camacho*, 302 F.3d 35, 36 (2d Cir. 2002) (internal citations and quotation marks omitted)

### III.  Discussion

Allums seeks a new trial pursuant to Rule 33 "based on newly discovered evidence of prosecutorial misconduct which deprived him of his due process right to a fair trial."  (Doc. 650 at 5.)  Specifically, Allums claims to seek a new trial based upon alleged newly discovered evidence that (1) the Government misrepresented during trial that "Darnell Frazier ('Frazier'), had falsely testified about his drug dealing past, thereby convincing the Court to wrongly admit evidence of Frazier's 1998 conviction for narcotics distribution," (2) "the Government violated their duty of candor and deliberately failed to alert the Court to their misrepresentation at a time when the Court could have -- indeed, [Allums claims], would have -- granted a mistrial," and that (3) the error of wrongfully admitting Frazier's 1998 conviction was compounded by the fact that I did not provide a limiting instruction to the jury concerning Frazier's testimony.  (*Id.* at 5, 24-25.)  In response the Government argues that (1) Allums improperly seeks to "reap the

10

benefits of [my] decision granting . . . Darnell Frazier's motion for a new trial," and (2) it did not know prior to summations that it had made a misrepresentation concerning Frazier's testimony and therefore the allegations of misconduct relating to the Government's failure to disclose its error to me was not prosecutorial misconduct. (Doc. 659 at 2-3, 6-8.)

At its core, Allums's second motion for a new trial concerns events that occurred during trial on the record that were available to all counsel at the time of and after trial. Therefore, the motion is not based on new evidence and must be denied. In any event, even assuming the Government failed to timely disclose its misrepresentation, I find that Allums was not denied a fair trial. Specifically, Allums's second motion for a new trial must be denied because (1) the evidence of the Government's misrepresentation of co-defendant Darnell Frazier's testimony is contained in the trial transcript and is therefore not newly discovered evidence; (2) assuming for purpose of this motion that the Government was aware of its misrepresentation to me prior to summations, Allums fails to demonstrate he is prejudiced and entitled to a new trial under Rule 33; (3) the instructions to the jury as a whole eliminated any prejudice to Allums from Frazier's admissions; and (4) the evidence of Allums's guilt was overwhelming.[4]

### A. *Evidence of the Government's Misrepresentation is not Newly Discovered Evidence*

The time within which Allums was required to file a new trial motion not based on newly discovered evidence expired when he filed his first motion for a new trial. *See* Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty"); *United States v. Williams*, No. 10-cr-622 (ADS), 2017 WL 5483744, at *2 (E.D.N.Y. Nov. 15, 2017) ("After the

---

[4] Although the stay of Allums's appeal has been lifted, I retain jurisdiction to decide the pending motion. *See Camacho*, 302 F.3d at 36.

14 day limit, the only ground on which [Defendant] may pursue a new trial under Rule 33 is the existence of newly discovered evidence".) The facts underlying Allums's current Rule 33 were known and cannot be considered newly discovered evidence. Specifically, Frazier's testimony that the Government incorrectly asserted was false, the assertions made by the Government to me that misrepresented Frazier's testimony, and the Government's subsequent examination of Frazier about his prior testimony and his 1998 narcotics conviction were all contained in the trial transcript. During cross-examination by the Government, Frazier was asked the following:

> Q. And you know that Steven Christopher used to sell crack on Riverdale, right?
>
> A. I do not know that.
>
> Q. You know he used to carry guns on Riverdale, right?
>
> A. I do not know that.
>
> Q. You know he used to shoot guns on Riverdale, right?
>
> A. Never seen him do it.
>
> Q. You know all of that because you were with him on Riverdale when he did all of those things, weren't you, sir?
>
> MR. MARGULIS-OHNUMA: Objection.
>
> THE COURT: I will allow it. Overruled.
>
> A. Absolutely not.
>
> Q. ***You personally sold crack on Riverdale with him, didn't you, sir?***
>
> A. ***No, I did not.***
>
> Q. And you carried guns with him, didn't you, sir?
>
> A. No, I did not.
>
> Q. And you shot guns with him, didn't you, sir?
>
> A. No, I did not.

12

(*Id.* at 1839:3–21 (emphasis added).)  During a break in Frazier's trial testimony, the Government argued that it should be permitted to question Frazier regarding a 1998 controlled substance conviction in order to impeach his testimony regarding crack sales on Riverdale.  In making this argument the Government asserted that during his testimony, Frazier denied ever selling crack on Riverdale.  (*Id.* at 1876:5–8).  The Government stated "I asked Mr. Frazier whether he ever sold crack with [Christopher].  He said no.  ***And I asked him whether he ever sold crack on Riverdale in general, and he said he never sold crack on Riverdale***."  *Id.* (emphasis added.)  As can be seen by review of Frazier's testimony quoted above, the purported last question was not asked and was a misrepresentation.  While Frazier had answered the first question ("You personally sold crack on Riverdale with [Christopher], didn't you?") in the negative, (*see* Trial Tr. 1839:15–16), the follow-up question the Government claimed to have asked about Frazier selling crack on Riverdale in general had not been asked.

At the time, Frazier's counsel assumed that the Government's description of his client's testimony was accurate (Trial Tr. 1876:13-17) ("I'm sorry.  I consulted with Mr. Frazier.  It's true that he was convicted in the '90s.  I don't think it's particularly relevant.  He made a mistake.  We can clear it up on cross or on redirect.  I just don't think it can be proved up extrinsically."), and Frazier's counsel added that he did not "want to leave the false testimony" and agreed that the Government "can clear it up," (Trial Tr. 1877:3–7).  Allums's counsel also did not object to the proposed questioning relating to the 1998 conviction, nor did he request a curative instruction.

During this discussion, I noted, "in light of the fact that Mr. Frazier has taken the stand in response to the questions, knowledge and intent has now been placed in issue, I think, pretty squarely with regard to both narcotics trafficking and possessing firearms," given Frazier's

13

testimony denying his knowledge of narcotics and firearms activity at One Family Deli. (*Id.* at 1876:21–25.) The Government indicated that the questioning on this topic would be "for impeachment purposes," Frazier's attorney said he had "no objection to that," and I permitted the questioning for that purpose. (*Id.* at 1877.) Following this colloquy and my ruling, the Government cross-examined Frazier regarding his 1998 conviction. (*Id.* at 1878–79.) Trial counsel for Allums's cross examination of Frazier only spanned one page. (*Id.* at 1930:5-1931:1.) The Government did not reference Frazier's 1998 conviction in its summation or rebuttal arguments, and no instruction directly relating to the conviction was asked for or given to the jury, either at the time of the Government's cross-examination or during the jury charge.

As the above unequivocally demonstrates, all of the information Allums needed to argue that the Government misrepresented Frazier's testimony, and thereby committed misconduct was available to all counsel in real time during the trial. Allums cannot claim that this information was hidden since Frazier's counsel identified the testimony and the Government's misrepresentation about that testimony in Frazier's new trial motion. (*See* generally Doc. 557.) Therefore, I find that the Government's misrepresentation of Frazier's testimony is not newly discovered evidence under Rule 33 because it was contained in the trial transcript and could have been discovered by trial counsel, who filed Allums's first new trial motion. Moreover, in the absence of a declaration or affidavit stating otherwise, I presume that counsel for Allums read the trial transcript as part of his effort to identify issues he deemed appropriate to raise in Allums's first new trial motion but did not find Frazier's exchange with the Government during cross examination and the Government's misrepresentation about that testimony sufficiently prejudicial to Allums to warrant including in the first new trial motion. In other words, counsel appears to have made a strategic decision not to raise the issue in Allums's first new trial motion.

14

Even assuming that the Government was aware of its misrepresentation prior to summations, the cross examination of Frazier concerning his 1998 drug sale, his conviction, and the Government's misrepresentation concerning Frazier's testimony was equally available to all counsel and is not newly discovered evidence under Rule 33. Defendant has not cited any case law to support his assertion that the Government's awareness of a misrepresentation when that misrepresentation is contained in the trial record can be considered newly discovered evidence for purposes of a Rule 33 motion.

### B. *The Government's Misrepresentation Did Not Unduly Prejudice Allums*

Allums argues that the newly discovered evidence is the fact that the Government became aware of its misrepresentation prior to summations but did not disclose that fact to me and defense counsel. (*See* Doc. 650 at 5.) Allums then claims that the Government's failure to disclose its misrepresentation to me prejudiced him by not giving the defense the opportunity to request a mistrial and me the opportunity to grant a mistrial. (*Id*. at 13, 18-19.) The Government asserts that in preparing for its summation it did not review its representation to me but only reviewed Frazier's testimony, and that it only realized its mistake when it read Frazier's new trial motion and went back and read the transcript.[5] (Govt. Mem. at 6-7.) On this record I cannot resolve this factual dispute. However, I do not need to in order to decide this motion.

A trial judge may declare a mistrial "'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity' for doing so. The decision to

---

[5] In a footnote in my decision granting Frazier's new trial motion I assumed that the Government became aware of its misrepresentation when it stated during oral argument that "in going back, we saw it wasn't a one to one between what he testified to originally and the second part. So we dropped it. We didn't bring it up in our closing or our rebuttal." (*See* 12/4/18 Tr. 26:9–12).) My assumption is inconsistent with the Government's specific response to my question when it first became aware it had made a misrepresentation. Specifically, the Government stated that "it was after getting the [new trial] motion from Ms. Liebesman that we went back, really focused on what happened at sidebar and realized the mistake that we had made, that defense counsel – not Ms. Liebesman, Mr. Margulis-Ohnuma had made at the time, sort of all operating under the assumption that's what he had said at the sidebar." (*Id.*)

15

declare a mistrial is left to the 'sound discretion' of the judge, but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Renico v. Lett*, 559 U.S. 766, 773–74 (2010) (Stevens, J., dissenting) (citing *United States v. Perez*, 22 U.S. 579, 580 (1824)). "[M]inor trial errors only require a reversal if the litigant can establish that he has been prejudiced; litigants are entitled to a fair, as opposed to a perfect trial." *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir. 1995) (internal citations and quotations omitted).

Allums fails to meet his "burden of proving that he is entitled to a new trial". *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). The ability to discover the Government's misrepresentation was equally available to all trial counsel. In other words, evidence of the alleged misrepresentation was available to all counsel and the defense could have made a mistrial motion during trial. Therefore, without an affidavit or declaration from his trial counsel stating that he did not read the relevant portions of the trial transcript and/or discover the misrepresentation prior to summations or at some point prior to the filing of his first new trial motion, Allums has not even put forth evidence sufficient to establish that he has been prejudiced and arguably entitled to a new trial. In other words, if Allums's counsel identified the Frazier testimony and the Government's misrepresentation of that testimony prior to filing Allums's first new trial motion he cannot claim he has been prejudiced by the Government's failure to disclose because he cannot have been prejudiced by something of which he was aware.

In any event, Allums's claim that the Government's failure to disclose its misrepresentation to me prejudiced him by not giving the defense the opportunity to request a mistrial and me the opportunity to grant a mistrial is not supported by the trial record and is pure speculation. Indeed, the trial record demonstrates that Allums was not prejudiced such that he is

16

entitled to a new trial.  I also note that besides claiming that he was prejudiced by not being able to request a mistrial, Allums fails to say how he was otherwise prejudiced by Frazier's testimony and/or the Government's misrepresentation.  The reason for this failure is simple, Allums suffered no prejudice.

As an initial matter, Frazier's testimony about his sale of crack and conviction in 1998 spanned fewer than two pages out of the one hundred and fifty-five pages of his testimony, (Tr. 1779-1934), and almost two thousand pages of the trial transcript.  *Cf. Locascio*, 6 F.3d at 947 (rejecting defendant's argument that the large volume of evidence introduced against one defendant created spillover prejudice against the co-defendant.)  In addition, the Government did not repeat that testimony in its main or rebuttal summations.  Based upon these facts alone it is clear that the argument that Allums was prejudiced by Frazier's testimony is dubious at best, and further analysis demonstrates Allums was not prejudiced.  Indeed, rather than support a finding of prejudice to Allums, Frazier's testimony demonstrates that Allums had no connection to Frazier's crack sale and conviction in 1998, and therefore his testimony and the Government's misrepresentation about it could not have caused any prejudice to Allums.  Specifically, Frazier's testimony established that (1) he first met Yonnel Allums in 2011, (Tr. 1845:1-4), over a decade after Frazier's crack sale and conviction in 1998; (2) his sale of crack and his conviction predate the charged conspiracy by 13 years, and (3) his sale of crack and conviction in 1998 did not explicitly or implicitly implicate Allums, (Tr. 1878:5-1879:15).  Allums was not prejudiced and his motion for a new trial on the basis of prosecutorial misconduct must be denied.[6]

Having taken "all the circumstances into consideration," had I known about the

---

[6] I note that after being granted a new trial, (Doc. 622), Frazier pled guilty on May 2, 2019, and was sentenced to 108 month's imprisonment, (Doc. 651).

17

Government's misrepresentation I would have declined to exercise my discretion to grant a mistrial. As I alluded to in my Opinion & Order granting Frazier a new trial, if I had become aware of the error the appropriate course would have been to strike the offending testimony and issue a curative instruction to the jury, including possibly indicating to the jury that the Government had unintentionally misrepresented the content of Frazier's testimony.

### C. *The Instructions to the Jury Mitigated any Prejudice to Allums*

As demonstrated above, Allums was not prejudiced by Frazier's testimony because there was no factual basis upon which the jury could have associated Allums with Frazier's 1998 drug sale since, among other things, they did not even know one another at that time. (Tr. 1845:1-4.) In any event, the law is clear that jurors are presumed to follow a court's instructions on the law. *See United States v. Becker*, 502 F.3d 122, 130 (2d Cir. 2007). Here, the jury was specifically instructed that it was to consider each defendant separately, (Tr. 2417) ("In reaching a verdict, however, you must bear in mind that guilt is individual. Your verdict as to each defendant must be determined separately with respect to that defendant, solely on the evidence, or lack of evidence presented against that defendant without regard to the guilt of anyone else.")), thereby eliminating any possibility of spillover prejudice from Frazier's testimony. In any event, Allums does not claim that the proof against Frazier dwarfed the proof offered against him. Therefore, to the extent that Allums is arguing that he suffered from some sort of spillover prejudice the jury instructions eliminated any possible prejudice. *Cf. United States v. Chang An-Lo,* 851 F.2d 547, 556 (2d Cir. 1988) (where defendants claimed that the "overwhelming majority of the evidence introduced at trial was not admissible against them," the Second Circuit concluded that district judge's instruction to the "jury to consider the case against each defendant separately, and [explanation] that a person may associate with or even be friendly with a criminal without

being one himself," was sufficient to protect against spillover prejudice); *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984) (finding the district court's limiting instructions sufficient to protect co-defendants from prejudicial spillover from evidence admissible only against other co-defendants, especially in light of the fact that the movant did not point to any flaw in the instructions.)

### D. *The Evidence of Allums's Guilt is Overwhelming*

The evidence presented at trial overwhelmingly established Allums's guilt. During trial, the Government introduced evidence that 173 Woodworth—a location that included a store, apartment, and surrounding grounds—served as the base of operations for Allums's drug business. (*See, e.g.*, Trial Tr. at 122–43, 183, 186, 641–51, 753–70, 805–06, 827–47; GX 1–5 (drugs purchased from store property in 2016); GX 6A, B, C, D, E, F, L, Q, R, S (drugs and drug paraphernalia seized from apartment in 2016); GX 7A, B, C, D (drugs and drug paraphernalia seized from apartment in 2012).) The Government also offered evidence directly tying Allums to the store property. (*See, e.g.*, Trial Tr. at 183, 653; GX 405, GX 411, GX 420B.)

Four cooperating witnesses all testified that they were members of the narcotics conspiracy at different points in time between 2011 and 2016, and that Allums was a member of the conspiracy. Specifically, two of the cooperators—Christopher and Southerland—testified that Allums acted as their supplier of cocaine, providing them with drugs at the store located at 173 Woodworth. (*See, e.g.*, Trial Tr. at 180, 185–86, 682–83.) Christopher also testified that he personally cooked cocaine into crack for Allums and saw Allums cooking cocaine into crack himself. (*See, e.g.*, *id.* at 193.) The cooperators corroborated each other, and their testimony was also corroborated by, among other things, telephone call records demonstrating contact among alleged conspirators, seizures of drugs on two occasions from the apartment above the store

19

located at 173 Woodworth, and recorded controlled purchases of crack cocaine from Allums's nephew—Kaheim Allums—on the store property. (*See, e.g.*, GX 1–5, 6A–6V, 7A–7D, 202A–203H, 501–517, 802, 803.)

It was Allums's burden to prove his entitlement to a new trial. *McCourty*, 562 F.3d at 475. As the above demonstrates he has clearly failed to meet his burden. Moreover, based upon the evidence presented at trial and the circumstances of the instant motion discussed above, letting the jury's verdict stand would not be "a manifest injustice," *Ferguson*, 246 F.3d at 134, and I do not have a belief "that an innocent person may have been convicted," *Bell*, 584 F.3d at 483 (quoting *Sanchez*, 969 F.2d at 1414).

Accordingly, Allums's motion for a new trial is denied.

## IV.  Conclusion

For the reasons stated above, Defendant's motion for a new trial is DENIED. The Clerk of the Court is respectfully directed to terminate the pending motion at Document 649.

SO ORDERED.

Dated: July 7, 2020
    New York, New York

Vernon S. Broderick
United States District Judge